UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA L. MEHAY,

      Plaintiff,

v.

Civil Case No. 19-cv-12991
Honorable Linda V. Parker

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 18]; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 22]; AND AFFIRMING DECISION DENYING PLAINTIFF SOCIAL SECURITY BENEFITS</u>**

In this lawsuit, Joshua L. Mehay appeals a final decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under the Social Security Act. Both parties have filed summary judgment motions. (ECF Nos. 18, 22.) After review of the record, the Court finds that the decision of the administrative law judge ("ALJ") is supported by substantial evidence. The Court, therefore, is denying Plaintiff's summary judgment motion, granting Defendant's motion, and affirming the Commissioner's decision finding Plaintiff not disabled under the Social Security Act.

I.      Background

     A.      **Plaintiff's Disability Application and the Administrative Process**

Plaintiff was born on February 21, 1988, making him 23 years old on his alleged onset date of November 11, 2011. (ECF No. 9-2 at Pg ID 45, 56.) He has past work as a TSA security officer. (*Id.* at Pg ID 56.) He alleged disability because of histoplasmosis, neck and shoulder injury, dissociative identity disorder, knee injury, depression, leg weakness and falling, and terminal illness. (ECF No. 8-3 at Pg ID 114.)

After the Commissioner denied Plaintiff's application initially, Plaintiff requested a hearing which took place before an ALJ on December 19, 2018. (ECF No. 8-2 at Pg ID 70.) Plaintiff was not represented by counsel and, after being advised by the ALJ, indicated that he understood his right to representation and waived that right. (*Id.* at Pg ID 72-74.) Plaintiff and a vocational expert testified at the hearing. (*Id.* at Pg ID 77-108.)

On May 15, 2019, the ALJ issued a written decision finding Plaintiff not disabled. (ECF No. 8-2 at Pg ID 45-57.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at Pg ID 31-33.) Plaintiff timely filed for judicial review. (ECF No. 1.)

### B. The ALJ's Decision

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

An ALJ considering a disability claim is required to follow a five-step sequential process to evaluate the claim. 20 C.F.R. § 404.1520(a)(4). The five-step process is as follows:

1. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).

2. At the second step, the ALJ considers whether the claimant has a severe medically determinable physical or mental impairment that meets the duration requirement of the regulations and which significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c).

3. At the third step, the ALJ again considers the medical severity of the claimant's impairment to determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets any Listing, he or she is determined to be disabled regardless of other factors. *Id.*

4. At the fourth step, the ALJ assesses the claimant's residual functional capacity ("RFC") and past relevant work to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

5. At the fifth step, the ALJ considers the claimant's RFC, age, education, and past work experience to see if he or she can do other

    work. 20 C.F.R. § 404.1420(a)(4)(v). If there is no such work that the claimant can perform, the ALJ must find the claimant disabled. *Id*.

If the ALJ finds the claimant disabled or not disabled at a step, the ALJ makes his or her decision and does not proceed further. *Id*. § 404.1520(a)(4). However, if the ALJ does not find the claimant disabled or not disabled at a step, the ALJ must proceed to the next step. *Id*. "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

  At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 11, 2011. (ECF No. 8-2 at Pg ID 47.) The ALJ found at step two that Plaintiff has the following severe impairments: histoplasmosis; status post wedge resection of histoplasmosis; obesity; asthma; hypertension; internal derangement, left shoulder, status post open mumford; acromioclavicular (AC) internal widening; lumbar spondylosis; internal derangement left knee; degenerative disc disease; and history of carpal tunnel syndrome. (*Id*. at Pg ID 48.) In reaching this determination, the ALJ found that Plaintiff's medically determinable mental impairment of depression was not severe. (*Id*.) The ALJ next analyzed whether Plaintiff's impairments meet any of the listed impairments and determined they do not. (*Id*. at Pg ID 49-50.)

4

At step four, the ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> to stand and walk up to 4 hours of 8. Could sit up to 6 hours of 8. Could lift no more than 15 pounds occasionally and 10 pounds frequently. Could only stoop, squat, climb, balance, crouch, crawl, or kneel occasionally. Would need to avoid extreme temperature, wetness, and humidity. Would need a clean air environment free from concentrated levels of dust, fumes, chemicals, gases, and other airborne irritants. No overhead lifting. Occasional fingering.

(*Id*. at 50-56.) The ALJ then found Plaintiff incapable of performing his past relevant work as a TSS security officer. (*Id*. at Pg ID 56.)

At the final step, the ALJ considered whether a significant number of jobs exist in the national economy that Plaintiff can perform given his age (28), education (high school), work-experience, and RFC. (*Id*. at 56-57.) Relying on the testimony of the vocational expert, the ALJ concluded that such jobs exist. (*Id*.) Specifically, the ALJ identified the job of rental clerk. (*Id*. at 57.)

The ALJ therefore found Plaintiff not disabled under the Social Security Act. (*Id*.) As indicated, the Appeals Council subsequently denied Plaintiff's request for review and Plaintiff filed the instant lawsuit.

## II. Standard of Review

Federal district courts have jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the court "must affirm the Commissioner's decision

5

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case de novo, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**IV.**   **Plaintiff's Arguments & Analysis**

Plaintiff challenges the ALJ's decision on three grounds:

1. The ALJ's decision was not supported by substantial evidence, as the RFC finding was based on the ALJ's interpretation of raw medical data without a sufficient basis to her conclusions.

2. The ALJ's decision is unsupported by substantial evidence, as she failed to adequately consider or address the evidence regarding [Plaintiff]'s mental impairments, or include them in the residual functional capacity assessment.

3. The ALJ failed to develop the record for an unrepresented claimant.

(ECF No. 18 at Pg ID 3929-30.)  The Court addresses each argument in turn.

**A.**   **Raw Medical Data**

Plaintiff argues that after finding two "medical opinions" less persuasive—the only opinions as to Plaintiff's functional capacities and limitations in the record

7

(*see* ECF No. 18 at Pg ID 3943)—the ALJ was left to rely on her own interpretation of raw medical findings to make her decision.[1]

Pursuant to 20 C.F.R. § 404.1527(d), the RFC assessment is left solely to the ALJ's purview. In making that assessment, the ALJ must consider all functional limitations resulting from the claimant's medically determinable impairment(s). (SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The claimant bears the burden of establishing his or her RFC, including that he or she has greater limitations than the ALJ assessed. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

There is significant case law in this circuit confirming that "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.'" *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)); ; *see also Ali v. Comm'r of Soc. Sec.*, No. 15-

---

[1] One of the opinions was a "WorkAbility Functional Capacity Evaluation" completed by Amy Cawrse, OTR/L, an occupational therapist. (*See* ECF No. 8-19 at Pg ID 2921-35.) The ALJ concluded that Ms. Cawrse was not an acceptable medical source (ECF No. 8-2 at Pg ID 54), a conclusion Plaintiff does not dispute. The second was the opinion of the State agency medical consultant. (ECF No. 8-3 at Pg ID 126-28.) The ALJ found the consultant's assessment "less persuasive" because it predated the entry of significant additional medical documentation in the record.

14483, 2017 WL 726665, at *11 (E.D. Mich. Jan. 20, 2017), *adopted*, 2017 WL 712899 (E.D. Mich. Feb. 23, 2017) (explaining that where the only opinion evidence has been discounted, "[c]ourts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not 'play doctor.'"). Nevertheless, the Sixth Circuit has stated that requiring the "ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)); *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ need only "make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019); *see also Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011) (explaining that the ALJ must "provide an accurate and logical bridge between the evidence and the result").

The focus of Plaintiff's challenge here is the ALJ's assessment of his histoplasmosis infection. (ECF No. 18 at Pg ID 3943-49.) Plaintiff argues that the ALJ misinterpreted raw medical evidence establishing that he suffered from

9

histoplasmosis. (*Id.* at Pg ID 3945-47.) However, the ALJ included histoplasmosis as one of Plaintiff's medical impairments and concluded that this impairment was severe. (ECF No. 8-2 at Pg ID 48.) In other words, the ALJ accepted that Plaintiff had a histoplasmosis infection. Nevertheless, the ALJ determined that this impairment did not require greater limitations than those assessed in the RFC.

The ALJ did not interpret raw medical data beyond her ability to reach this conclusion. Rather, she relied on treatment notes from multiple sources—available in part because Plaintiff sought several "second" opinions regarding this particular impairment from various medical providers, including the Cleveland Clinic, the University of Michigan Hospital, and the Mayo Clinic. Plaintiff does not identify any evidence from these records supporting greater functional limitations than those assessed by the ALJ. None of the doctors who examined Plaintiff limited his activities due to histoplasmosis. (*See, e.g.,* ECF No. 8-9 at Pg ID 838-40; ECF No. 8-10 at Pg ID 872-87, 917-18; 978-80; ECF No. 8-13 at Pg ID 1703-09; ECF No. 8-17 at Pg ID 2522.)

In fact, the record reflects "doubt" that Plaintiff's symptoms were related to histoplasmosis and at least one doctor opined that they were more likely related to Plaintiff's smoking. (ECF No. 8-9 at Pg ID 840-41; *see also* ECF No. 8-10 at Pg ID 878; ECF No. 8-13 at Pg ID 1723; ECF No. 8-17 at Pg ID 2522.) And contrary

to Plaintiff's report to various providers (*see, e.g.*, ECF No. 8-13 at Pg ID 1727, 1735; ECF No. 8-21 at Pg ID 3381), there is no indication in the records from the Mayo Clinic that he was ever given a terminal diagnosis, much less that he was told he had three to five years to live (*see* ECF No. 8-17 at Pg ID 2516-2613).[2] Just as Plaintiff is the only source for this "diagnosis," he is the only source for the link between his claimed symptoms and histoplasmosis.

The ALJ discounted Plaintiff's subjective complaints because they were "not entirely consistent with the other medical evidence in the record" (ECF No. 8-2 at Pg ID 50) and because they were contradicted by his reported activities (*id*. at Pg ID 52-55). Substantial evidence in the record supports the ALJ's finding. Plaintiff extensively traveled during the relevant period, including a road trip to North Carolina and back in September 2015, two trips to Mexico in 2016, a trip to a nudist camp in May 2018, and trips to Disney World and France in January 2019. (ECF No. 8-9 at Pg ID 689; ECF No. 8-12 at Pg ID 1352; ECF No. 8-22 at Pg ID 3695; ECF No. 8-16 at Pg ID 2344; ECF No. 8-20 at Pg ID 3094, 3096, 3139,

---

[2] Plaintiff asserts in his motion that his "records range from doctors doubting that his symptoms were related to histoplasmosis, to others reportedly telling him his condition was terminal and that he had only 3-5 years to live. (ECF No. 18 at Pg ID 3945 (citing ECF No. 8-9 at Pg ID 840; ECF No. 8-17 at Pg 2522; ECF No. 8-21 at Pg ID 33812.) Only the last cited record mentions a terminal diagnosis and that was *Plaintiff's* report to his doctor about what he purportedly was told at the Mayo clinic. (ECF No. 8-21 at Pg ID 3381.) Plaintiff cites no record where this information was conveyed *to him*; and, from the Court's review of the record, Plaintiff was the only source of this information.

11

3142, 3215.) In October and November 2016, Plaintiff reported playing ice hockey four times a week (ECF No. 8-12 at Pg ID 1330, 1334; ECF No. 8-21 at Pg ID 3419), and in June 2018, he reported "push[ing] himself too hard during [a] recent family vacation" to Mackinac Island and being arrested after jumping a fence by a waterfall (ECF No. 8-20 at Pg ID 3113).

In short, substantial evidence supports the ALJ's conclusions with respect to the limitations on Plaintiff's functional capacity due to his physical ailments. The ALJ did not interpret raw medical data to reach her conclusions and a remand for further development and for an updated medical opinion is not warranted.

### B. Mental Impairments

Plaintiff argues that the ALJ's decision is not supported by substantial evidence as she never mentions Plaintiff's diagnosis of anxiety or PTSD, only analyzed the severity of his mental impairments when discussing the "B criteria" at step two, and failed to address any limitations due to his mental impairments elsewhere in the decision.

As an initial matter, the only mental conditions Plaintiff listed on his application and amended application were depression and dissociative identity disorder.[3] (*See* ECF No. 8-6 at Pg ID 218; ECF No. 8-5 at Pg ID 179-80, 198; *see*

---

[3] The ALJ did not discuss Plaintiff's dissociative identity disorder diagnosis in her opinion. Plaintiff does not assess error on this basis, however. In any event, the ALJ's finding regarding the minimal limitations in Plaintiff's ability to perform

12

*also* ECF No. 803 at Pg ID 113-14.) Plaintiff has the burden to present evidence of his impairments and their severity. *Wilson*, 378 F.3d at 548. "Although the ALJ must consider all the impairments the claimant alleges in determining whether the claimant is disabled, … the ALJ need not scour the medical record searching for other impairments that might be disabling … that have not been identified by the claimant." *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006) (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)); *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1986) (quoting *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993)) (finding no error in the ALJ's failure to develop evidence concerning the claimant's depression where it was not listed on the claimant's disability application because the "administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'"); *see also Motin v. Comm'r of Soc. Sec.*, No. 09-13354, 2010 WL 1754821, at *3 (E.D. Mich. April 30, 2010) (ruling that the claimant waived alleged illiteracy disability by not raising it in her benefits application or at the hearing before the ALJ).

There also was no error in the ALJ's failure to discuss Plaintiff's mental impairment of depression past her step-two analysis after finding the impairment

---

basic mental work activities speaks generally to Plaintiff's mental functioning rather than the limitations caused by any specific impairment. (ECF No. 8-2 at Pg ID 48-49.)

nonsevere. (ECF No. 8-2 at Pg ID 48-49.) An ALJ is required to consider the combined effect of all impairments, including those deemed nonsevere, in the residual-functional-capacity assessment. *See* 20 C.F.R. § 416.945(e) (providing that the ALJ will consider the "limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity"); SSR 96-8p (explaining that "[i]n assessing [residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Nevertheless, "an ALJ need not specifically discuss all nonsevere impairments in the residual-functional capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 951-52 (6th Cir. 2020). In Plaintiff's case, at step two, the ALJ explicitly referenced SSR 96-8p and stated that her "residual functional capacity assessment reflects the degree of limitation [she] found in the 'paragraph B' mental function analysis." (ECF No. 8-2 at Pg ID 49.) Further, at step four, the ALJ indicated that she "considered *all* symptoms" and the entire record when assessing Plaintiff's RFC. (*Id.* at Pg ID 50 (emphasis added).)

At step two, the ALJ found that Plaintiff's mental impairment of depression "did not cause more than minimal limitation in [his] ability to perform basic mental work activities …." (*Id*. at 48.) The ALJ stated the basis for this conclusion. (*Id.*

14

48-49.) The RFC does not need to reflect impairments if the record supports a finding that the impairments do not result in functional limitations. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). As the Sixth Circuit explained in *Griffeth*:

> The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard [v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)]. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004).

217 F. App'x at 429. The ALJ's determination that Plaintiff's depression did not result in any work-related restrictions or limitations is supported by substantial evidence.

Again, Plaintiff bears the burden of establishing his functional limitations. *See Wilson, supra*. Plaintiff does not point to any evidence in the record documenting any specific mental functional limitations. Treatment notes instead reflect that Plaintiff consistently was alert and oriented x4, that his recent and remote memory were intact, and that he had normal appearance, orientation, attention and concentration, language associations, speech, thought process, judgment and insight, fund of knowledge, memory, and mood and affect. (*See* ECF No. 8-12 at Pg ID 1523-48; ECF No. 8-14 at Pg ID 1763-89; ECF No. 8-20 at Pg ID 2958.) Plaintiff testified before the ALJ that he has no difficulty with his

15

memory, paying attention, or following instructions. (ECF No. 8-2 at Pg ID 90.) He also testified that he gets along "very well" with people in a business or school setting. (ECF No. 8-2 at Pg ID 89.) It was reported that he has a good relationship with his wife and children. (ECF No. 8-12 at Pg ID 1547.)

Further, Plaintiff's mental impairment did not interfere with his ability to obtain an associate degree in criminal justice. (ECF No. 8-20 at Pg ID 2959.) At the time of the hearing in this case, he was studying business administration and pursuing a bachelor's degree at Washtenaw Community College and reported that he would be obtaining his degree in Fall 2017. (ECF No. 8-2 at Pg ID 77-78, 80, ECF No. 8-14 at Pg ID 1776; ECF No. 8-20 at Pg ID 2959.)

For these reasons, Plaintiff fails to demonstrate an error in the ALJ's analysis of his mental impairments.

### C. Adequate Development of the Record for an Unrepresented Claimant

Plaintiff maintains that the ALJ did not satisfy her duty to develop the record where he was unrepresented before the agency. In *Lashley v. Secretary of HHS*, 708 F.2d 1048 (6th Cir. 1983), the court held that an ALJ has a special, heightened duty to develop the record "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures[.]" *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051-52). As the *Wilson* court pointed out, "[a]bsent such

special circumstances . . . [the Sixth Circuit Court of Appeals] repeatedly affirms that the claimant bears the ultimate burden of proving disability." *Id.* (citing *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003)). As the *Wilson* court also pointed out, the claimant in *Lashley* "was a 79-year old with a fifth-grade education, who after suffering two strokes had trouble reading, writing, and reasoning." *Id.* (citing *Lashley*, 708 F.2d at 1049).

Plaintiff was not represented by counsel, but he knowingly waived that right at the hearing. More importantly, there is nothing in the record suggesting that he was incapable of presenting his case and understanding the process. As the Commissioner points out, at the time of the hearing, Plaintiff held an associate degree in criminal justice and was working toward his bachelor's degree in business administration. The hearing transcript reflects Plaintiff's understanding of the need to present a complete record. (*See* ECF No. 8-2 at Pg ID 90-96.) The record itself—consisting of over 3,000 pages of medical records—reflects Plaintiff's ability to muster an impressive amount of evidence to support his claim. There is nothing in this case to suggest that this case falls within *Lashley*'s "special circumstances."

## V. Conclusion

For the reasons stated, the Court finds no error in the ALJ's decision and concludes that it is supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's decision denying Plaintiff benefits under the Social Security Act is **AFFIRMED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: March 29, 2021